IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 07-cv-01751-LTB

GEORGE W. BARRIE,

       Plaintiff,

v.

UNITED STATES DEPARTMENT OF LABOR,
EMPLOYMENT STANDARDS ADMINISTRATION,
OFFICE OF WORKERS COMPENSATION PROGRAMS,
DIVISION OF ENERGY EMPLOYEES OCCUPATIONAL ILLNESS COMPENSATION, and
FINAL ADJUDICATION BRANCH,

       Defendants.
_____

**MEMORANDUM OPINION AND ORDER**
_____

Babcock, J.

Plaintiff, George W. Barrie, seeks reversal of a decision of the Office of Workers' Compensation Programs ("OWCP") of the Department of Labor ("DOL") dated May 2, 2007. Jurisdiction is proper under 42 U.S.C. § 7385s-6 and 28 U.S.C. § 1331. Oral argument would not materially assist the determination of this appeal. After consideration of the papers and the administrative record, and for the reasons stated below, I AFFIRM in part, REVERSE in part, and REMAND the May 2, 2007, decision to OWCP for further proceedings consistent with this Order.

## I. BACKGROUND

Plaintiff is a former contract employee of the Department of Energy ("DOE") who worked as a journeyman machinist at the Rocky Flats Plant in Golden, Colorado, from 1982 to

1989. Plaintiff claims numerous illnesses as a result of exposure to toxic compounds and radiation during his employment.

In August 2001, Plaintiff filed a claim under the Energy Employees Occupational Illness Compensation Program Act ("EEOICPA" or "the Act"). DOE referred Plaintiff's claim to a physician panel for review. The physician panel determined none of Plaintiff's illnesses were related to exposure to toxic substances during his employment at Rocky Flats. [Administrative Record "AR" 1727–29].

Plaintiff requested administrative review of the panel's determination. [AR 1265]. The review panel—comprised of the same three physicians as the initial panel—determined one of Plaintiff's illnesses, chronic atrophic gastritis, was related to his exposure to toxic substances, but Plaintiff's other maladies were not. [AR 1277, 1272–1300]. On January 12, 2006, OWCP issued a Final Decision awarding Plaintiff medical benefits for chronic atrophic gastritis, and remanding Plaintiff's claims for medical benefits as to the other illnesses for additional factual development. [AR 1003–06]. OWCP also remanded Plaintiff's claim for wage loss for additional factual development. [AR 1003].

Following further review, including review of additional records submitted by Plaintiff, DOL's regional office recommended all Plaintiff's claims for wage loss, and all claims for medical benefits other than those awarded for chronic atrophic gastritis, be denied. [AR 617–32]. Plaintiff requested an informal hearing that was conducted on September 26, 2006. [AR 295–339]. During and following the hearing, Plaintiff submitted additional evidence to support his contentions. Plaintiff chose Dr. Mayer of National Jewish Hospital to evaluate Plaintiff's permanent impairment due to his chronic atrophic gastritis, which she determined to be thirteen percent. [AR 248–54]. Incorporating Dr. Mayer's findings, OWCP recommended

Plaintiff be awarded $32,5000—offset by $17,402.40 already paid under Colorado Workers' Compensation—for a total EEOICPA award of $15,097.60. [AR 203].

Plaintiff's objections to OWCP's findings regarding his other illnesses were referred to a toxicologist, Dr. Stokes. Dr. Stokes opined "with reasonably scientific certainty" that exposure to toxic substances at Rocky Flats was not "at least as likely as not" a significant factor in aggravating, contributing to, or causing Plaintiff's illnesses. [AR 192]. Dr. Stokes referred Plaintiff's case to a Dr. Brooks, who also opined Plaintiff's illnesses were not related to exposure to toxic substances at Rocky Flats. [AR 180].

On May 2, 2007, OWCP issued a Final Decision awarding Plaintiff $15,097.60 for his chronic atrophic gastritis impairment. [AR 65]. OWCP denied all Plaintiff's claims for wage-loss benefits, and also denied medical benefits for the other claimed illnesses. [AR 68]. Plaintiff filed a request for reconsideration of the May 2, 2007, decision, which was denied on June 20, 2007, on grounds that Plaintiff failed to present "any new argument or evidence that directly contradicts the conclusions reached in the final decision." [AR 33]. Plaintiff then filed his appeal with this Court.

## II. CLAIMS PROCEDURE UNDER EEOICPA

Under the EEOICPA, DOE employees are entitled to compensation for "illnesses incurred by such employees in the performance of duty for the Department of Energy and certain of its contractors and subcontractors." 42 U.S.C. § 7384d. Plaintiff initially filed claims under both Part B and Part D—which was subsequently repealed by Congress and replaced with Part E—of the EEOICPA. Plaintiff did not appeal DOL's denial of his Part B claims, so only his Part E claims are addressed here.

Under Part E, an employee of a DOE facility—including a worker employed by a DOE contractor or subcontractor—is eligible for compensation if he develops a "covered illness" as a result of work-related exposure to a toxic substance. 42 U.S.C. §§ 7385s-1 and 7385s-2. The Act defines the term "covered illness" to mean "an illness or death resulting from exposure to a toxic substance." 42 U.S.C. § 7385s(2). A "toxic substance" is "any material that has the potential to cause illness or death because of its radioactive, chemical, or biological nature." 20 C.F.R. § 30.5(ii).

A claimant must show by a preponderance of the evidence that: (1) he was a DOE contractor employee; (2) he contracted a covered illness; and (3) he contracted the covered illness through exposure to a toxic substance at a DOE facility. 20 C.F.R. §§ 30.5, 30.110, and 30.111. A claimant will be determined to have contracted a covered illness through exposure to a toxic substance at a DOE facility if: "(A) it is at least as likely as not that exposure to a toxic substance at a Department of Energy facility was a significant factor in aggravating, contributing to, or causing the illness; and (B) it is at least as likely as not that the exposure to such toxic substance was related to employment at a Department of Energy facility." *See* 42 U.S.C. § 7385s-4(c)(1). Where—as here—a claimant also seeks benefits for lost wages resulting from being unable to work due to a covered illness, the claimant bears the additional burden of submitting "rationalized medical evidence of sufficient probative value to establish that the period of wage-loss at issue is causally related to the . . . employee's covered illness." *See* 42 U.S.C. § 7385s-2(a)(2); 20 C.F.R. § 30.805(b).

The district OWCP office is charged with making an initial determination whether the claimant is entitled to benefits. 20 C.F.R. § 30.300. OWCP then forwards its recommendation to the Final Adjudication Branch ("FAB"), at which point the claimant is given an opportunity to

file an objection to the OWCP recommendation. 20 C.F.R. § 30.300. If a claimant objects, he may request a hearing or may request review of the recommendation on the written record. 20 C.F.R. §§ 30.310 and 30.312. In either case, the FAB will allow the claimant to submit additional evidence supporting his claim before issuing its final decision. 20 C.F.R. §§ 30.313, 30.314, and 30.316.

Claimants are given an additional opportunity to request reconsideration of the FAB's final decision. 20 C.F.R. § 30.319. Claimants must make the request in writing within thirty days of the date of decision, and are not entitled to a hearing. 20 C.F.R. § 30.319. If the FAB determines on reconsideration that additional factual development is necessary, the FAB may return the claim to the OWCP district office. 20 C.F.R. §§ 30.317 and 30.319.

## III. STANDARD OF REVIEW

The EEOICPA limits the scope of judicial review, allowing courts to set aside a final agency decision only if it is found to be arbitrary and capricious. 42 U.S.C. § 7385s-6(a). An agency's action is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The party challenging the agency action bears the heavy burden of proving that it was arbitrary and capricious. *See Citizens' Comm. to Save Our Canyons v. Krueger*, 513 F.3d 1169, 1176 (10th Cir. 2008).

Although review under the "arbitrary and capricious" standard is narrow, I am required to engage in a substantial inquiry and "a probing in-depth review" to ensure the agency's action is

5

supported by specific facts. *See Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 285 (1974); *Lamb v. Thompson*, 265 F.3d 1038, 1046 (10th Cir. 2001); *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1576 (10th Cir. 1994). Such review is limited to the administrative record before the agency at the time the agency decision was made and considers only the grounds for decision invoked by the agency. *See Sandoval v. Aetna Life and Cas. Ins. Co.*, 967 F.2d 377, 381 (10th Cir. 1992).

Agency actions are presumed to be valid. *See Motor Vehicle Mfrs. Ass'n*, *supra*, 463 U.S. at 43. Accordingly, I will uphold the agency's action so long as the agency considered the relevant factors, and articulated a rational connection between the facts found and the choices made. *See id.* I will affirm the agency's decision if it is based upon substantial evidence, that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Foust v. Lujan*, 942 F.2d 712, 714 (10th Cir. 1991) (citing *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). For evidence to be "substantial," it must be something more that a mere scintilla, but may be less than the weight of the evidence. *See id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

I am not empowered to substitute my judgment for that of the agency. *See Foust*, *supra*, 942 F.2d at 714. Because the substantiality of the evidence must be based upon review of the record as a whole, however, I am likewise not free to disregard contrary evidence in the record. *See Bowman Transp.*, *supra*, 419 U.S. at 284 n.2; *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

### IV.  ANALYSIS

Plaintiff—who is proceeding *pro se*—raises what appears to be five claims for relief: (1) OWCP improperly reduced Plaintiff's $32,500 award by the entire amount already paid under

6

Colorado Workers' Compensation; (2) Plaintiff was denied adequate due process; (3) OWCP improperly failed to award Plaintiff wage loss for his chronic atrophic gastritis; (4) OWCP ignored evidence showing Plaintiff's other illnesses were related to occupational exposure to toxins; and (5) some documents improperly included in Plaintiff's file were potentially prejudicial.

### A. OWCP improperly reduced Plaintiff's $32,500 award by the entire amount already paid under Colorado Workers' Compensation

Plaintiff argues DOL ignored its own regulations when OWCP offset the amount of his award by the entire amount of benefits already paid under Colorado Workers' Compensation. Under the EEOICPA:

> An individual who has been awarded compensation under this part, and who has also received benefits from a State workers compensation system by reason of the same covered illness, shall receive compensation specified in this part reduced by the amount of any workers compensation benefits, *other than medical benefits* and benefits for vocational rehabilitation, that the individual has received under the State workers compensation system by reason of the covered illness, after deducting the reasonable costs, as determined by the Secretary, of obtaining those benefits under the State workers compensation system.

42 U.S.C. § 7385s-11(a) (emphasis added). The Final Decision issued on May 2, 2007, states:

> The evidence of record indicates that you have received state workers' compensation benefits (other than medical benefits and benefits for vocational rehabilitation) in the amount of $17,402.40. The settlement (page 3) states that "The final settlement is for all claims by claimant against respondents arising out of an industrial accident which occurred on 7/5/89." This does not specify that the award was for medical benefits only; therefore all Part E benefits payable to you shall be coordinated with this amount. You are entitled to $15,097.60.

[AR 89]. Plaintiff argues it was error for OWCP to reduce his award to $15,097.60 because his state workers' compensation benefits included "medical benefits," which are not deductible.

7

A review of the record includes a "General Admission of Liability" completed in conjunction with Plaintiff's workers' compensation claim stating: "Medical benefits admitted for the atrophic gastritis condition." [AR 1075]. This supports Plaintiff's argument that the $17,402.40 paid by Colorado Workers' Compensation was—at least in part—for non-deductible medical benefits. Moreover, the "Stipulation for Full and Final Settlement and Release of All Claims," includes a settlement for "all claims," including "medical benefits." [AR 239–46]. Accordingly, the terms of the settlement agreement indicate that while some of the $17,402.40 contemplated payment for the considerations other than medical benefits—including disfigurement and disability benefits—at least some amount of the $17,042.40 contemplated payment for medical benefits.

EEOICPA regulations make clear that OWCP "shall reduce a portion of the dollar amount of such state workers' benefit from the compensation payable under Part E" only after determining "the dollar value of the benefits received by that individual from a state workers' compensation program by including all benefits, *other than medical and vocational rehabilitation benefits*, received for the same covered illness." 20 C.F.R. § 30.626 (emphasis added). Here, however, OWCP never attempted to determine "the dollar value of the benefits . . . other than medical benefits." Instead, OWCP simply concluded that—since Plaintiff did not show "the award was for medical benefits only"—the entire workers' compensation award should be deducted. This is not what the statute or regulations require. Accordingly—as OWCP "failed to consider an important aspect of the problem"—its decision to reduce Plaintiff's award by the entire amount of the workers' compensation settlement was arbitrary and capricious and cannot stand. *See Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43. On remand, DOL must determine

the amount of the $17,042.40 properly considered payment for "medical benefits" that may not be deducted from the final payment amount.

### B. Plaintiff was denied adequate due process

Plaintiff argues he was denied due process because he had no opportunity "to object to the final decision via an informal hearing" and because he was not given copies of the documents relied upon by Dr. Stokes when she determined Plaintiff's illnesses—other than chronic atrophic gastritis—were not "at least as likely as not" caused by exposure to toxic substances at Rocky Flats.

"The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'" *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999). Only after finding the deprivation of a protected interest does the Court look to see if the objected-to procedure comports with due process. *Id*. It is not entirely clear, however, that Plaintiff had a property interest in EEOICPA benefits at all. *See id*. at 60–61 (holding an employee does not have a property interest in workers' compensation benefits sufficient to make out a due process claim unless he can show he would have been entitled to such benefits, but for the due process violation). In order to have a protected interest, Plaintiff would have to first show he was eligible for those benefits. *See id*. at 61. Plaintiff makes out no such case here.

Even assuming such an interest exists, Plaintiff fails to show DOL deprived him of due process. EEOICPA regulations provide that—when a claimant wishes to object to a final decision—a claimant may request that the FAB reconsider the decision, but note: "A hearing is not available as part of the reconsideration process." 20 C.F.R. § 30.319(c). The standard of deference given DOL in formulating this regulation depends on whether the authority to make

the rule is considered legislative or interpretive. *See Sala v. United States*, 552 F. Supp. 2d 1167, 1198 (D. Colo. 2008). "If Congress has explicitly or implicitly delegated authority to an agency to issue a certain regulation, the regulation is considered a legislative regulation and is given controlling weight unless it is arbitrary, capricious, or manifestly contrary to the statute." *Id.* at 1198 (citing *Chevron U.S.A., Inc. v. Natural Res. Defense Council, Inc.*, 467 U.S. 837, 844 (1984)). Because the EEOICPA explicitly delegates to the Secretary of the Department of Labor the authority to issue rules necessary to determine whether a claimant contracted a covered illness as part of his employment—*see* 42 U.S.C. § 7385s-4(c)(2)—20 C.F.R. § 30.319(c) is a legislative regulation. *See Sala*, 552 F. Supp. 2d at 1199. As Plaintiff provides no argument suggesting DOL acted in an arbitrary and capricious manner when it promulgated the regulation, I conclude the regulation must be given controlling weight. *See Citizens' Comm. to Save Our Canyons v. Krueger*, 513 F.3d 1169, 1176 (10th Cir. 2008); *Phillips v. Calhoun*, 956 F.2d 949, 953–54 (10th Cir. 1992); *Webb v. Hodel*, 878 F.2d 1252, 1255 (10th Cir. 1989). Accordingly, it was not a denial of due process to deny Plaintiff a hearing on his request for reconsideration of the FAB's final decision.

Turning to Plaintiff's next argument—that, had he been given copies of all the documents relied upon by DOL and the referral physicians, he may have been able to determine whether the documents contained inaccurate or incomplete information prior to the May 2, 2007, Final Decision—Plaintiff fails to show how this slight infringed his due process rights. Although Plaintiff concedes he has now reviewed these documents, he directs me to no specific inaccuracies or instances of incomplete information. As such—even if Plaintiff had a "property right" in the benefits at issue—Plaintiff's argument must be rejected as speculative. *See Sullivan*, 526 U.S. at 61; *Colorado Wild, Heartwood v. U.S. Forest Service*, 435 F.3d 1204, 1217

(10th Cir. 2006); *Lighton v. Univ. of Utah*, 209 F.3d 1213, 1223–24 (10th Cir. 2000); *N.L.R.B. v. I.W.G., Inc.*, 144 F.3d 685, 689 (10th Cir. 1998).

C.  <u>DOL improperly failed to award Plaintiff wage-loss benefits for his chronic atrophic gastritis</u>

Plaintiff claims lost wages as a result of his chronic atrophic gastritis beginning March 23, 1995, and continuing through the present. [AR 638, 684]. Under the EEOICPA, once a claimant establishes he is entitled to impairment benefits, he may also be entitled to lost wages incurred as a result of the covered illness. 42 U.S.C. § 7385s-2(a)(2). In order to show the lost wages are compensable, OWCP "requires the submission of rationalized medical evidence of sufficient probative value to establish that the period of wage-loss at issue is causally related to the covered Part E employee's covered illness." 20 C.F.R. § 30.805(b).

Plaintiff claims OWCP acted arbitrarily and capriciously by denying his wage loss claim. Initially, Plaintiff argues OWCP improperly reviewed his claim under the "preponderance of the evidence" standard, rather than the "at least as likely as not" standard. It appears Plaintiff confuses the "at least as likely as not" standard—which applies specifically to the question whether he contracted a covered illness through exposure to a toxic substance at a DOE facility—with the preponderance burden that generally applies under the Act. But the regulations are specific: "Except where otherwise provided in the Act and these regulations, the claimant bears the burden of proving by a preponderance of the evidence the existence of each and every criterion necessary to establish eligibility under any compensable claim category." 20 C.F.R. § 30.111(a). Neither the Act nor the regulations provide for a different burden in the context of a wage-loss claim. Accordingly—although the burden of proof for showing he has a contracted a covered illness through exposure at a DOE facility is controlled by the "at least as

11

likely as not" standard—Plaintiff is required to show the period of wage-loss at issue is *causally related to* the covered illness by a preponderance of the evidence.

Plaintiff next argues OWCP acted arbitrarily and capriciously by finding he failed to establish his wage loss was causally related to his chronic atrophic gastritis. Under EEOICPA guidelines, the claims examiner ("CE"):

> develops the case for a causal relationship between the wage loss and the covered Part E employee's covered illness by requesting medical evidence from the claimant which can include: (1) Doctor's office notes which indicate that the covered Part E employee had stopped working due to the covered illness; (2) Return to work slips signed by a doctor; (3) A doctor's signed statement explaining the causal relationship between the covered illness and the period(s) of wage loss; [and] (4) In addition, where there is evidence of a serious disabling medical condition, the CE may obtain an opinion from a District Medical Consultant (DMC) regarding the period of illness-related disability.

Chapter E-800 Wage-Loss Determinations [AR 4309–10].

The administrative record includes an April 24, 2006, letter from Plaintiff's personal physician, Dr. Told, indicating that Plaintiff "will never be able to work again" due to his gastritis, and that the gastritis cannot adequately be controlled with medication. [AR 633, 1057]. Dr. Told—who had treated Plaintiff's gastritis as early as December 26, 2001 [AR 724]—states he is "very familiar with [Plaintiff]'s problems and illnesses surrounding his occupational exposure to plutonium waste products at Rocky Flats." [AR 1057]. While OWCP found "no medical evidence was submitted" to support Dr. Told's opinion that Plaintiff was unable to work, Dr. Told's findings were in fact supported by an endoscopy and stomach biopsy that confirmed Plaintiff's gastritis, as well as other medical records accumulated over a years-long time period. [AR 116, 186, 633, 723–25]. Although the record contains a much-earlier examination by a Dr. Brown that concluded the gastritis "should not limit the claimant in any

12

areas of employment" [AR 3790], OWCP determined Dr. Brown's report "was January 1997, and should not carry weight for the current wage-loss claim." [AR 116].

In its May 2, 2007, Final Decision, OWCP relied on the report of Dr. Kalnas—a "District Medical Consultant" specializing in occupational and environmental medicine who conducted a review of Plaintiff's medical records, without a physical examination—to discredit Dr. Told's opinion. [AR 106, 713–50]. Dr. Kalnas, however, expressed no opinion on whether Plaintiff's gastritis limited his ability to work. Instead, Dr. Kalnas merely recited the opinion of Dr. Brown—an opinion OWCP determined did not apply to the wage-loss claim at issue—that Plaintiff's gastritis "should not limit the claimant in any areas of employment." [AR 725]. Accordingly, Dr. Told's statement that Plaintiff "will never be able to work again"—at least as of April 24, 2006, the date of Dr. Told's letter to that effect—was in fact uncontradicted by the relevant medical record.

OWCP also relied on Dr. Kalnas's statement that Dr. Brown's report "suggests that [Plaintiff]'s gastric problems were more widespread and related to other factors rather than a small focus of atrophy that was possibly caused by a radioactive particle." [AR 116, 119–20, 724–25]. As OWCP previously rejected Dr. Brown's report as irrelevant to Plaintiff's present wage-loss claim for gastritis, however, OWCP's reliance on Dr. Kalnas's summary of the report—not being based upon "such *relevant evidence* as a reasonable mind might accept as adequate to support a conclusion"—to deny the wage-loss claim was arbitrary and capricious. *See Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1575–76 (10th Cir. 1994); *Foust v. Lujan*, 942 F.2d 712, 714 (10th Cir. 1991) (emphasis added).

"Because the arbitrary and capricious standard focuses on the rationality of an agency's decisionmaking process rather than on the rationality of the actual decision, '[i]t is well

13

established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Olenhouse*, 42 F.3d at 1575–76 (citing *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 50). Accordingly, to the extent the May 2, 2007, Final Decision denied Plaintiff's application for wage-loss benefits for his gastritis, it is reversed and remanded for further proceedings. On remand, OWCP may not disregard Dr. Told's uncontradicted medical opinion without articulating a *relevant* factual basis. Further, if OWCP accepts Dr. Told's uncontradicted opinion, it must make an additional factual inquiry to determine the relevant dates of wage-loss.

### D. DOL ignored evidence showing Plaintiff's other illnesses were related to occupational exposure to toxins

Plaintiff next argues DOL improperly denied his claims regarding twenty-two conditions—other than chronic atrophic gastritis—for which he sought benefits. With the exception of his claim for nephritis, Plaintiff directs me to no evidence supporting his claims for these other conditions. Accordingly, the May 2, 2007, Final Decision, denying Plaintiff benefits for these other illnesses is affirmed. *See Citizens' Comm. to Save Our Canyons v. Krueger*, 513 F.3d 1169, 1176 (10th Cir. 2008).

On Plaintiff's claim for nephritis, Plaintiff directs me to the physician review panel's report stating: "Panel does have information indicating that patient had occupational exposures that were high enough to be [a] significant contributing factor to this condition." [AR 1214]. Despite finding Plaintiff's exposures were high enough to be a significant contributing factor to the nephritis, the panel stated there was no evidence indicating Plaintiff's nephritis arose "out of and in the course of employment . . . based on whether it is at least as likely as not that exposure to a toxic substance . . . was [a] significant factor in aggravating, contributing to or causing the worker's illness or death." [AR 1214]. Clearly, the panel could not rationally find both that it

had such information and that it did not have such information. The OWCP's Final Decision did not address this discrepancy, nor did it determine why the panel's finding that Plaintiff "had occupational exposures that were high enough to be [a] significant contributing factor to this condition" was insufficient to meet the "at least as likely as not" standard. When an agency decision relies on irrational judgment or fails to consider important aspects of the problem, the decision is arbitrary and capricious. *See Bd. of County Comm'rs of County of Adams v. Isaac*, 18 F.3d 1492, 1496–97 (10th Cir. 1994). Accordingly, to the extent the May 2, 2007, Final Decision denied Plaintiff's claim for nephritis, it is reversed and remanded for further proceedings.

E.  Some documents improperly included in Plaintiff's file were potentially prejudicial

Finally, Plaintiff argues certain documents in his record "could have possibly prejudiced Defendants' personnel while deciding my claim." As Plaintiff's argument is supported neither with facts nor with law, it is rejected as speculative. *See Colorado Wild, Heartwood v. U.S. Forest Service*, 435 F.3d 1204, 1217 (10th Cir. 2006).

## V. CONCLUSION

Accordingly, IT IS ORDERED that OWCP's May 2, 2007, Final Decision in this matter is AFFIRMED in part and REVERSED in part and REMANDED to the OWCP as follows:

1. To the extent the May 2, 2007, Final Decision deducted the full amount of Plaintiff's Colorado Workers' Compensation settlement from Plaintiff's EEOICPA impairment award, the May 2, 2007, Final Decision is REVERSED and REMANDED with instructions to determine the amount of the Colorado Workers' Compensation settlement properly attributable to "medical benefits" that may not be deducted from the EEOICPA award;

2. To the extent the May 2, 2007, Final Decision denied Plaintiff's application for wage-loss benefits for chronic atrophic gastritis, the May 2, 2007, Final Decision is REVERSED and REMANDED for further inquiry consistent with this Order;

3. To the extent the May 2, 2007, Final Decision denied Plaintiff's application for benefits for nephritis, the May 2, 2007, Final Decision is REVERSED and REMANDED for further inquiry consistent with this Order;

4. In all other respects, the May 2, 2007, Final Decision is AFFIRMED.

Dated: January __29__, 2009.

BY THE COURT:

  s/Lewis T. Babcock
Lewis T. Babcock, Judge